**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| BARBARA BIVENS, | ) | |
| | ) | CASE NO.     1:11-cv-02821 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff Barbara Bivens ("Bivens") challenges the final decision of the Commissioner of

Social Security, Michael J. Astrue ("Commissioner"), denying her claim for Supplemental

Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et*

*seq*.  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties

entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

**I.  Procedural History**

On October 24, 2008, Bivens filed an application for SSI alleging a disability onset date

of September 1, 2008.  Her application was denied both initially and upon reconsideration.

Bivens timely requested an administrative hearing.

On February 8, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Bivens, represented by counsel, and an impartial vocational expert ("VE") testified.  On April 14, 2011, the ALJ found Bivens was able to perform a significant number of jobs in the national economy and, therefore, was not disabled.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II.  Evidence

*Personal and Vocational Evidence*

Age forty-eight (48) at the time of her administrative hearing, Bivens is a "younger" person under social security regulations.  *See* 20 C.F.R. § 416.963(c).  Bivens has a limited education and past relevant work as a cashier and barmaid/bartender.  (Tr. 20.)

*Hearing Testimony*

At the hearing, Bivens testified as follows:

- She is forty-eight (48) years old.  She is 5'8" tall and weighs 210 pounds.  She gained ninety pounds in approximately two years due to her prescription for Prednisone.  (Tr. 32.)

- She has difficulty ascending/descending stairs because it exacerbates her breathing problems.  (Tr. 34.)

- She used to be able to clean the house in one hour, but, due to all the breaks she needs it now takes her all day.  (Tr. 35.)

- She never had a driver's license because she is "very paranoid about driving." (Tr. 35.)   She never takes public transportation and relies on friends or family to drive her places.  (Tr. 36.)

- She does some light grocery shopping.  (Tr. 36.)

- She has a ninth grade education and never attempted to obtain a GED.  She has no vocational training.  (Tr. 36.) She is able to read, and reads newspapers, magazines, and likes to do crossword puzzles.  She has no problems adding and subtracting.  (Tr. 37.)

- She had past work as a cashier and a bar maid.  (Tr. 38.)  She also worked in the Giant Eagle meat department for a few months.  (Tr. 39.)

- She sees Dr. Briceman, her primary care physician, once or twice a month.  (Tr. 40.)

- She takes Celexa for anxiety, which causes no real side effects.  She takes Prednisone, which causes edema and weight gain.  (Tr. 41.)

- Her anxiety was "not so bad" since her dosage was increased, but she gets paranoid when out in public and thinks everyone stares at her.  (Tr. 42.)  She is scared of people and, therefore, does not go out often.  She first began experiencing anxiety two to three years earlier.  (T. 43.)

- She stopped working as a bar maid primarily due to shortness of breath.  (Tr. 44.)

- She does not have any trouble sitting, but her breathing bothers her while sitting as well.  (Tr. 44.)

- She can stand for about twenty to twenty-five minutes without interruption.  (Tr. 44.)  She needs to rest anywhere from fifteen minutes to half an hour before she can stand again.  (Tr. 45.)

- She can walk a couple of blocks, about five minutes, before she needs to catch her breath.  (Tr. 45.)

- She can lift ten to fifteen pounds.  (Tr. 45.)

- She had COPD for about four years.  She quit smoking.  (Tr. 46.)

- She uses a nebulizer to help with shortness of breath.  (Tr. 46.)  She also uses an inhaler and takes Advair for her breathing problems.  She was prescribed Qvar and Singulair just two weeks earlier.  (Tr. 47.)

- She naps "an hour or so during the day a couple of times a day."  (Tr. 48.)

- She watches television during the day and tries to straighten up the house a little bit.  (Tr. 48.)  She crochets about once a week and does it for three to four hours.  (Tr. 49.)

- She is on the computer once or twice a day for about ten to fifteen minutes at a time.  (Tr. 49-50.)

3

- She quit smoking almost two years ago.  (Tr. 51.)

- She is scared when she leaves the house and is paranoid.  (Tr. 52.)  She is depressed and attempted suicide seven years earlier.  *Id.*  She has crying spells a couple of times a week.  (Tr. 52-53.)

The ALJ posed a number of hypothetical questions to the VE:

[A]ssume an individual the same age, education and work experience as the claimant.  This individual would be able to perform work at ... the medium level which would be lift no more than 50 pounds occasionally and lift, carry up to 25 pounds frequently, stand walk for about six hours and sit for up to six hours in an eight hour day with normal breaks.  This individual would be able to occasionally stoop and occasionally crouch.  They would have to avoid concentrated exposure to extreme cold, avoid concentrated exposure to extreme heat and avoid even moderate exposure to environmental irritants such as fumes, odors, dust and gasses.  This hypothetical individual would be further limited in that work would be limited to simple routine and repetitive tasks performed in a work environment free of fast paced production requirements involving only simple work related decisions and routine work place changes, They could have no interaction with the public.  The work can be around co-workers throughout the day but with only occasional and superficial interaction with co-workers.

(Tr. 56-57.)

The VE testified that such an individual could not perform Bivens's past relevant work, but could perform the jobs of stock handler and hand packer or packager.  (Tr. 57-58.)  The ALJ posed a second hypothetical asking the VE to assume all limitations were the same as in the first, except that the individual was limited to light exertional work involving no more than lifting up to 20 pounds occasionally and lifting/carrying ten pounds frequently.  (Tr. 58.)  The VE responded that such an individual could perform the jobs of mail clerk and cleaner/housekeeper. (Tr. 58-59.)  The ALJ posed a third hypothetical asking the VE to assume all limitations were the same as in the first, except that the individual was limited to sedentary work involving no more than lifting up to 10 pounds occasionally, standing/walking would be limited to two hours in an eight-hour workday, and sitting for up to six hours with normal breaks.  (Tr. 59.)  The VE

4

testified that such person could perform the jobs of table worker and general office clerk. (Tr. 59-60.)

### III. Standard for Disability

A claimant may be entitled to receive SSI benefits when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV. Summary of Commissioner's Decision

The ALJ found Bivens established medically determinable, severe impairments, due to chronic obstructive pulmonary disease (COPD), asthma, bipolar syndrome-manic/depressive,

and anxiety disorder with agoraphobia. (Tr. 16.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Bivens was found incapable of performing her past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of medium work. (Tr. 18, 20.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Bivens was not disabled. (Tr. 20-21.)

## V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the

6

evidence could reasonably support the conclusion reached.  *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

## VI.  Analysis

*Listing 3.03(b)*

Bivens asserts that the ALJ erred by finding that her asthma did not meet or equal Listing 3.03(b).  (ECF No. 20 at 9-15.)

At step three, the burden of proof for establishing that an impairment meets or equals the requirements of a listing rests with the claimant.  *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).  To meet a listed impairment, a claimant must satisfy all of the criteria in the listing.  *See Roby v. Comm'r of Soc. Sec.*, 48 Fed. Appx. 532, 536 (6th Cir. 2002) (*citing Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987)).

"Sixth Circuit case law does not require a heightened articulation standard at step three of

7

the sequential evaluation process." *See Marok v. Astrue,* 2010 WL 2294056, *3 (N.D. Ohio, Jun. 3, 2010) (*quoting Bledsoe v. Barnhart*, No. 04-4531, 165 Fed. App'x 408, 411 (6th Cir. Jan.31, 2006)) (*citing Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986)).  The regulations state that the ALJ should review all evidence of impairments to see if the sum of impairments is medically equivalent to a "listed impairment."  20 C.F.R. §§ 404.1526, 416.926.  In order to conduct a meaningful review, the ALJ's written decision must make sufficiently clear the reasons for his decision.  *Marok*, 2010 WL 2294056 at *3.

It is undisputed that Bivens has severe impairments of COPD and asthma.  (Tr. 16.)  The ALJ analyzed Listings 3.02 and 3.03(A) & (B) – though only his conclusion as to the latter listing is in dispute – and determined that Bivens did not meet or equal any of them.  *Id*.  The ALJ found that Bivens did not meet or equal the Listing "despite well over 20 emergency room visits since she filed her application for [SSI] for asthma/COPD exacerbations because the evidence indicates that she has not been compliant with her follow-up treatment and this has caused her to return to the emergency room so frequently."  (Tr. 16.)  Later in the opinion, the ALJ specifically points out that Bivens had never been intubated, her chest x-rays were normal on most occasions, her attendance at follow-up treatment was poor, she never went to see a pulmonologist despite recommendations that she do so, she never submitted to a pulmonary study, and she has refused home oxygen due to financial concerns.  (Tr. 19.)

Bivens argues that the ALJ erred by finding that she did not meet or equal the listing because she was non-compliant with her treatment.  (ECF No. 20 at 11-15.)  Specifically, Bivens asserts that Social Security Ruling ("SSR") 82-59 requires that where benefits are denied for failing to follow a prescribed course of treatment, the ALJ must make a number of findings.

8

(ECF No. 20 at 10.)  Bivens argues that the ALJ failed to explain how the prescribed treatment would have restored her capacity to engage in substantial gainful activity.  *Id.* at 12-15. Conversely, the Commissioner argues that SSR 82-59 is inapplicable because it only applies after a finding of disability has been made.  By contrast, the Commissioner asserts that Listing 3.03(B), by virtue of the express language of the listing, requires compliance with treatment before the listing criteria is satisfied.  (ECF No. 21 at 17-18.)

> Listing 3.03(B), 20 C.F.R. Pt. 404, Subpt. P, App. 1, states, in pertinent part:
>
>> Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year.  Each in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

The Listing requires that a claimant suffer attacks "in spite of prescribed treatment."  The Listing does not require an analysis as to the efficacy of the treatment or that the treatment be prescribed by a treating source, as required in SSR 82-59.  In *Kennedy v. Apfel*, 1999 U.S. Dist. LEXIS 13193 (E.D.N.Y., Jul. 8, 1999), a district court essentially rejected a similar argument to the one Bivens advocates herein.  The *Kennedy* court found that for a listed impairment to be satisfied, a claimant must meet "all of the specified medical criteria," including the "in spite of prescribed treatment" language in Listing 3.03(B).  *Id.*, *citing Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  In *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001), the Eight Circuit Court of Appeals found that because the ALJ never determined that Holley was disabled,  SSR 82-59 was inapplicable.  Here too, the ALJ found that Bivens did not meet or equal the listing.  Bivens, on the other hand, cites no authority suggesting that SSR 82-59 governs the analysis of Listing 3.03(B), but simply asserts that SSR 82-59 should apply.  In the absence of any authority to

9

support Biven's position, this Court declines to alter the express requirements of Listing 3.03(B).

As such, the instant inquiry is limited to determining whether the ALJ's decision was sufficiently clear to allow this Court to conduct a meaningful review, and whether the decision was supported by substantial evidence.  *See, e.g., Bacon v. Astrue*, 2012 U.S. Dist. LEXIS 106364 at \*10 (N.D. Ohio, Jul. 31, 2012) ("The Sixth Circuit has clearly ruled that the governing regulations 'do[ ] not state that the ALJ must articulate, at length, the analysis of the medical equivalency issue,' and there is no heightened articulation standard at Step Three when the ALJ's findings are supported by substantial evidence.") (citations omitted).  The ALJ's opinion, while somewhat brief, sufficiently explains that the Listing was not satisfied because the attacks did not occur *in spite of* prescribed treatment.  Indeed, Bivens did not follow any recommended course of treatment. (Tr. 16.)  The ALJ expressly cites medical exhibit 17F as supporting his finding.  Therein, it is noted that Bivens had "10 [emergency department] visits for [shortness of breath]" but failed to show up for follow-up appointments.  (ECF No. 16-1, Tr. 954.)   Exhibit 17F also shows that an attending physician noted that Bivens needed outpatient follow-up as her only care "seems to be the [emergency department]." (Tr. 983.)  The same exhibit notes that despite 33 visits to the emergency department in a two year span, Bivens has not shown up for a single follow-up appointment that was scheduled for her. (Tr. 951.)  Given the above evidence of record, the Court finds that the ALJ's determination that Bivens did not meet or equal Listing 3.03(B) is supported by substantial evidence.

### *RFC and the Hypothetical Questions*

Bivens also argues that the ALJ erred at Step Five by failing to include a need for additional breaks in her RFC.  (ECF No. 20 at 16.)  The Commissioner maintains that the RFC

10

incorporated all limitations that the ALJ believed were warranted by the evidence of record. (ECF No. 21 at 19.)  The Commissioner further asserts that no physician of record opined that Bivens required any more breaks than normally allotted during an eight-hour work day.  *Id.*

An RFC determination is an indication of an individual's work-related abilities despite their limitations.  *See* 20 C.F.R. § 416.945(a).  A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner.  *See* 20 C.F.R. § 416.945(e).  As such, the ALJ bears the responsibility for assessing a claimant's RFC, based on *all* of the relevant evidence.  *See* 20 C.F.R. § 416.945(a) (emphasis added).  "Judicial review of the Commissioner's final administrative decision does not encompass re-weighing the evidence." *Carter v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 40828 at \*\*21-22 (W.D. Mich. Mar. 26, 2012) (*citing Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472 (6th Cir. 1982); *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 414 (6th Cir. 2011); *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 807 (6th Cir. 2008)).  Moreover, a plaintiff's mere disagreement with the weight an ALJ ascribes to certain opinions does not provide basis for overturning the Commissioner's RFC determination.  *Carter*, 2012 U.S. Dist. LEXIS 40828 at \*\*21-22.  A hypothetical question must precisely and comprehensively set forth every physical and mental impairment that the ALJ accepts as true and significant.  *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  In forming a hypothetical  question to be posed to a vocational expert, the ALJ is  required to incorporate only those limitations that he accepts as credible.  *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007) (*citing Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993)).  However, where the ALJ relies upon a hypothetical question that fails to adequately account for all of the claimant's limitations, it

11

follows that a finding of disability is not based on substantial evidence.  *See Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994).

Bivens cites no evidence of record beyond her own testimony that demonstrates a clear need for additional breaks.  The ALJ found that Bivens' statements were not credible to the extent they were inconsistent with the RFC finding.  (Tr. 18.)  Bivens has not challenged the propriety of the ALJ's credibility analysis.  As such, Bivens' argument amounts to an invitation for this Court to conduct a *de novo* review of the evidence.  This Court, however, cannot conduct such a review.  The ALJ was not bound to incorporate Bivens' allegations, which were not credited, into the RFC or the hypothetical question posed to the VE.  As the VE's testimony was given in response to a hypothetical that reasonably reflected all the limitations that the ALJ found valid and credible, the VE's testimony constitutes substantial evidence capable of supporting the finding that Bivens could perform jobs existing in significant numbers in the regional and national economies.  It is immaterial that there may exist evidence in the record that could support the opposite conclusion, as the ALJ has a zone of choice within which he can act without court interference.  As such, Bivens' second assignment of error is without merit.

## II.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence.  Accordingly, the decision of the Commissioner is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: October 3, 2012